UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DISTRICT

| | |
|---|---|
| CORY A. REEVES,<br><br>              PLAINTIFF,<br><br>    VS.<br><br>SHAWNEE STATE UNIVERSITY, ET AL.<br><br>             DEFENDANTS. | 1:16-CV-00765<br><br>DISTRICT JUDGE SUSAN J. DLOTT<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |

This matter is before the Court on the Motion for Judgment on the Pleadings (Doc. 11) filed by Defendants Shawnee State University ("SSU"), Dr. Crystal Sherman, and Dr. Leeann Denning (collectively, "the Shawnee State Defendants"). Plaintiff Cory Reeves filed this suit alleging racial discrimination after he was dismissed from the nursing program at SSU. The Shawnee State Defendants argue that Reeves fails to state a claim upon which relief can be granted and that the Court lacks jurisdiction as to certain claims. For the reasons that follow, the Court will **GRANT IN PART AND DENY IN PART** the Motion.

## I.       BACKGROUND

### A.       Complaint Allegations

The well-pleaded allegations of fact in the Complaint (Doc. 1) must be taken as true for purposes of the Motion.

Reeves, a black person, was a nursing student who paid tuition to and attended SSU from 2010 until April 27, 2016, the date he was dismissed from the nursing program. (*Id.* at PageID 4.)[1] He alleges that he was the only black person in his class. (*Id.* at PageID 4–5.)

SSU is a state university which offers bachelor, associate, and nursing degrees and which accepts federal funds. Dr. Sherman, a white person, is the Faculty Coordinator at SSU. Dr. Denning, a white person, is the Chair of the Department of Nursing at SSU. (*Id.* at PageID 5.) Defendants Frankie Saunders and Josie Wright, both white persons, are nurses for Defendant Southern Ohio Medical Center ("the Medical Center") and preceptors for SSU's Department of Nursing. (*Id.* at PageID 5–6.)

Reeves alleges that Defendants subjected him to intentional racial discrimination in the following instances: (1) he was scolded and mocked by a professor during class in the presence of other students in April 2015; (2) he was ignored when he raised his hand or asked a question in class, but the questions of white students were answered; (3) he was not permitted to make up required clinical sessions, but white students were permitted to do so, and SSU policy authorizes make-up opportunities; (4) he was delayed or denied access to exams, but white students were permitted access; (5) he was denied supportive transitional instruction given regularly to white students; and (6) he was placed in unfair test environments, while white students took their tests in quiet environments. (*Id.* at PageID 7–8.)

---

[1] The Shawnee State Defendants deny this factual allegation, though it is accepted as true for purposes of this Motion. They state that Reeves enrolled as a student in 2009, but did not enter the associate nursing program until 2013. (Doc. 4 at PageID 25.)

Reeves also alleges that he was subjected to discriminatory terms and conditions in his precepted clinical experience, to which white students were not subjected and in violation of SSU's preceptor policy, in the following instances: (1) Dr. Sherman assigned him a preceptor, Nurse Wright, who was going on vacation and training a new hire, such that he could not perform his required hours; (2) Dr. Sherman then assigned him a new preceptor, Nurse Saunders, after a two-week period where he had no preceptor, but Nurse Saunders told him that receiving the assignment was "throwing her under the bus;" (3) he was required to work at the Medical Center for 36 hours per week after Dr. Sherman told him the appropriate number of hours was 24 per week; (4) he was not permitted to do the work expected of a nursing student and that white students were permitted to perform; (5) he was told by Nurse Saunders to sit and study during his precept hours instead of being permitted to perform work normally performed by nursing students; (6) he was accused by Nurse Saunders of making mistakes he did not make; and (7) he was made to look incompetent by Nurse Saunders.  (*Id.* at PageID 9–10.)

Reeves was dismissed from the nursing program at SSU on or about April 28, 2016, before completion of the precepted experience and one week prior to his expected graduation. (*Id.* at PageID 11.)  He alleges he was dismissed based on false reports of poor performance by "defendants [*sic*] agents," including Nurse Saunders and Nurse Wright.  He further alleges that white nursing students were treated more favorably, including by being re-trained and permitted to repeat areas in which performance was below standard.  (*Id.*)  He alleges that he complained about the illegal and inappropriate conduct to University officials, including to Dr. Denning and Dr. Sherman, but that no action was taken to address his complaints.  (*Id.* at PageID 12.)  He

alleges that Dr. Sherman, Dr. Denning, and SSU upheld his dismissal despite knowing it was unwarranted.  (*Id.*)

**B.      Procedural Posture**

Reeves initiated this action against the Shawnee State Defendants, the Medical Center, Nurse Saunders, and Nurse Wright on July 21, 2016.  He asserts five broadly-worded claims:

(1) Denial of equal protection against all Defendants;

(2) Race discrimination in violation of 42 U.S.C. § 1981 against all Defendants;

(3) Race discrimination in violation of 42 U.S.C. § 1983 against SSU, the Medical Center, and Dr. Sherman;

(4) Discrimination by recipient of federal funds in violation of 42 U.S.C. § 2000d against SSU;

(5) Discrimination in violation of Ohio Revised Code Chapter 4112 against all Defendants; and

(6) Intentional infliction of emotional distress against all Defendants.

(Doc.1 at PageID 7–16.)  He asserts the claims against Dr. Sherman, Dr. Denning, Nurse Saunders, and Nurse Wright in both their official and individual capacities.  (*Id.* at 5–6.)  Reeves seeks to recover compensatory damages, punitive damages, "injunctive relief in the form of reinstatement to the nursing program, completion of his course and graduation[,]" and attorney fees.  (*Id.* at PageID 16–17.)

The Shawnee State Defendants filed an Answer denying liability on September 19, 2016. (Doc. 4.)  The Medical Center, Nurse Sherman, and Nurse Wright filed their Joint Answer denying liability the next day.  (Doc. 6.)

The Shawnee State Defendants filed the pending Motion for Judgment on the Pleadings on October 27, 2016.  Reeves requests in his Memorandum in Opposition that he be given the

4

opportunity to amend the Complaint in lieu of dismissal if the Court finds that he inadequately pleaded his claims.  However, Reeves has not filed a separate motion for leave to file an amended complaint nor has he submitted a proposed amended complaint for the Court's consideration.

## II.      STANDARD FOR MOTIONS FOR JUDGMENT ON THE PLEADINGS

Rule 12(c) permits a party to move for judgment on the pleadings.  The legal standard for adjudicating a Rule 12(c) motion is the same as that for adjudicating a Rule 12(b)(6) motion. *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007).  Rule 12(b)(6) permits a party to move for dismissal for "failure to state a claim upon which relief can be granted."  On a Rule 12(b)(6) motion, a district court "must read all well-pleaded allegations of the complaint as true."  *Weiner v. Klais and Co., Inc*., 108 F.3d 86, 88 (6th Cir. 1997).  However, this tenet is inapplicable to legal conclusions and legal conclusions couched as factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To withstand a dismissal motion, the complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

## III.   ANALYSIS

### A.   First and Third Claims for Relief:  Equal Protection and Race Discrimination Pursuant to 42 U.S.C. § 1983

Reeves alleges in the First and Third Claims for Relief that the Shawnee State Defendants denied him equal protection of the laws on the basis of his race.  He purports to assert an equal protection claim against all Defendants, but the race discrimination claim against only SSU, Dr. Sherman, and the Medical Center.  Reeves is making a distinction without a difference when he tries to separate the equal protection and race discrimination claims.  Both claims, if cognizable, must be asserted pursuant to 42 U.S.C. § 1983.  Section 1983 creates a private cause of action for violations of constitutional rights committed by a "person" acting under the color of state law. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class[,]" such as race.  *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 770 (6th Cir. 2005) (citation omitted).  Because the equal protection claim and the § 1983 race discrimination claim are co-extensive, the Court will assume Reeves intended to assert both claims against all three Shawnee State Defendants, including Dr. Denning.

#### 1.   Claims Against SSU and Official Capacity Claims Against Dr. Denning and Dr. Sherman

The Shawnee State Defendants move to dismiss these claims, in part, on the grounds that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002) ("[A] State is not a 'person' against whom a § 1983 claim for money damages might be asserted.").  Under Ohio law, the term "state" includes the

"all departments, boards, offices, commissions, agencies, institutions, and other instrumentalities" of the State of Ohio.  Ohio Rev. Code § 2743.01(A).  Public universities within the State of Ohio, such as SSU, are considered to be arms of the State.  *See McKenna v. Bowling Green State Univ.*, 568 F. App'x 450, 456 (6th Cir. 2014); *Phi Kappa Tau Chapter House Ass'n of Miami Univ. v. Miami Univ.*, No. 1:12–cv–657, 2013 WL 427416, at *4 (S.D. Ohio Feb. 4, 2013).  An exception to this standard applies when a plaintiff sues a state official in his or her official capacity and seeks only prospective injunctive relief.  "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983." *Mckenna*, 568 F. App'x at 456 n.1 (quoting *Will*, 491 U.S. at 71 n.10).

Additionally, SSU, and Dr. Denning and Dr. Sherman in their official capacities, also contend that they are entitled to Eleventh Amendment immunity.  The Eleventh Amendment provides as follows:

> The Judicial power of the United States shall not be construed to extend to any
> suit in law or equity, commenced or prosecuted against one of the United States
> by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.  "The Eleventh Amendment bars suits for money damages against the State, arms of the State, and state officials acting in their official capacities." *Doe v. Cummins*, No. 16-3334, — F. App'x —, 2016 WL 7093996, at *6 (6th Cir. Dec. 6, 2016).  It also bars "[s]uits for equitable relief against the State and its departments." *Id.*

However, the Eleventh Amendment does not bar suits for injunctive relief against state officials acting in their official capacities so long as the relief sought is "prospective in nature and designed to ensure future compliance with federal law." *Id.* (citing *Ex Parte Young*, 209 U.S. 123, 155–56 (1908) and *Edelman v. Jordan*, 415 U.S. 651, 666–69 (1974)).  If the

injunctive relief does not impose a monetary burden upon the State itself, then the injunctive relief usually can be considered prospective in nature and is allowable under the Eleventh Amendment.  *Id.*  In *Cummins*, the Sixth Circuit held that the Eleventh Amendment did not prohibit injunctive relief requiring university officials to remove negative disciplinary information from a plaintiff's educational records.  *Id.*  Likewise, the Eleventh Amendment would not prohibit official capacity claims against university officials for injunctive relief requiring a plaintiff's reinstatement into a nursing program.  *See Carten v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir. 2002) (stating that a claim for reinstatement to school is a claim for prospective relief allowed under the Eleventh Amendment); *Doe v. Ohio State Univ.*, — F. Supp. 3d —, No. 2:15-cv-2830, 2016 WL 6581843, at *5 (S.D. Ohio Nov. 7, 2016) (same).

The Court concludes that SSU cannot be sued for monetary damages or injunctive relief pursuant to § 1983 because it is not a "person" under § 1983 and because it has Eleventh Amendment immunity.  Dr. Denning and Dr. Sherman in their official capacities, likewise, cannot be sued for money damages for the same reasons.  However, Dr. Denning and Dr. Sherman in their official capacities are "persons" for purposes of § 1983 and lack Eleventh Amendment immunity to the extent that Reeves seeks injunctive relief.

Nonetheless, the Shawnee State Defendants contend that the claims against Dr. Denning and Dr. Sherman for injunctive relief fail because they are not the proper defendants.  The Shawnee State Defendants suggest that Dr. Denning and Dr. Sherman lack authority to reinstate Reeves into the nursing program.  Reeves has alleged that he complained about illegal conduct to various University officials, including Dr. Denning and Dr. Sherman.  (Doc. 1 at PageID 12.)  He alleges that they would not permit him to complete or retake the precepted experience.  (*Id.*)

8

Finally, he alleges that they upheld his dismissal from SSU. (*Id.*) The Shawnee State Defendants admit in their Answer that Dr. Denning and Dr. Sherman "had roles" in Reeves's appeal of his dismissal from the nursing program. (Doc. 4 at PageID 28.) More facts will need to be developed during discovery. At this time, however, the Court will not dismiss the § 1983 equal protection and race discrimination claims against Dr. Denning and Dr. Sherman in their official capacities for injunctive relief on the grounds that they are not proper defendants.

### 2. Individual Capacity Claims Against Dr. Denning and Dr. Sherman

Next, the Court will consider the § 1983 claims against Dr. Denning and Dr. Sherman in their individual capacities. The Shawnee State Defendants argue that Reeves has failed to state a claim upon which relief can be granted and that Dr. Denning and Dr. Sherman are entitled to qualified immunity. "[T]o establish liability and to overcome a qualified immunity defense, [the plaintiff] must show that his or her *own* rights were violated, and that the violation was committed *personally* by the defendant." *McKenna*, 568 F. App'x at 460 (citation omitted and emphasis in the original); *see also Dorsey v. Barber*, 517 F.3d 389, 399 n.4 (6th Cir. 2008) (stating that the court must assess each defendant's liability separately based on the defendant's own actions). An individual defendant cannot be held liable pursuant to § 1983 solely on the basis of respondeat superior. *Petty v. Cty. of Franklin, Ohio*, 478 F.3d 341, 349 (6th Cir. 2007). A supervisor is only liable if he encouraged, participated in, authorized, approved, or knowingly acquiesced in the unconstitutional conduct of his subordinates. *Id.*; *Taylor v. Mich. Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995). The mere failure to take corrective action is not sufficient to impose liability on supervisory personnel. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).

The doctrine of qualified immunity provides "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity provides immunity from suit, not simply a defense to liability. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To determine whether qualified immunity applies, courts must ask whether the government official's conduct violated a constitutional right, and if yes, ask whether the specific right violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001). The inquiry into whether the constitutional right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201. "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson*, 555 U.S. at 232. A defendant is entitled to qualified immunity if his conduct violated a constitutional right, but that right was not clearly established at the time of the violation. *Saucier*, 533 U.S. at 200–01. Courts can examine either issue first. *Pearson*, 555 U.S. at 236.

Under these standards, Dr. Denning and Dr. Sherman have qualified immunity for many of the discriminatory acts alleges in the Complaint. Reeves makes no allegations of fact that Dr. Sherman or Dr. Denning participated in, or approved of, actions wherein Reeves was scolded or mocked by a professor, ignored when he raised his hand in class, denied the opportunity to make up missed clinical sessions, delayed or denied access to exams, denied supportive transitional instruction, placed in unfair testing environments, assigned to work excess hours by his preceptor, denied the opportunity to perform nursing work during his preceptorship, accused of

making mistakes during his preceptorship, or made to look incompetent by his preceptor.

Dr. Denning and Dr. Sherman, therefore, have qualified immunity as to the equal protection and

race discrimination claims based on these allegations.  *See Petty*, 478 F.3d at 349.  Additionally,

Reeves makes no allegations of fact that Dr. Denning participated in, or approved of, actions

involving the assignment of Reeves's preceptors.  Dr. Denning has qualified immunity as to this

allegation as well.

      However, the claims will go forward to the extent Reeves alleges that Dr. Denning and

and Dr. Sherman personally participated in discriminatory conduct.  Reeves alleges that Dr.

Sherman assigned him precepts whose lack of availability and poor guidance contributed to his

inability to complete the precepted experience.  He also alleges that Dr. Denning and Dr.

Sherman both failed to take corrective action when Reeves complained about discriminatory

conduct, refused to allow him to complete or re-take the preceptorship—despite the fact that

exceptions had been made in similar circumstances for white nursing students—and upheld his

dismissal from SSU.  The Court will not dismiss these claims on the basis of qualified immunity

at this time.  As the Honorable Judge Gregory L. Frost stated in another student's discrimination

case against a state university:

> "If any 'right' under federal law is 'clearly established,' it is the constitutional
> right to be free from racial discrimination."  *Williams v. Richland Cnty. Children
> Servs.,* 489 Fed.Appx. 848, 854 (6th Cir. 2012).  Defendants cannot seriously
> argue that a reasonable university official would not have known that taking
> disciplinary action against a student based on racial animus was a violation of the
> student's rights to equal protection under the law.

*Thompson v. Ohio State Univ.*, 990 F. Supp. 2d 801, 816 (S.D. Ohio 2014).

**B.      Second Claim for Relief:  Race Discrimination in Violation of 42 U.S.C. § 1981**

Reeves alleges in this claim that the Defendants are liable for race discrimination in

violation of 42 U.S.C. § 1981.  That section provides:

> All persons within the jurisdiction of the United States shall have the same right
> in every State and Territory to make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all laws and proceedings for the
> security of persons and property as is enjoyed by white citizens, and shall be
> subject to like punishment, pains, penalties, taxes, licenses, and exactions of every
> kind, and to no other.

42 U.S.C. § 1981(a).  It is understood to "prohibit[] racial discrimination in the making and

enforcement of contracts."  *McCormick v. Miami Univ.*, 693 F.3d 654, 659 (6th Cir. 2012).

**1.      Claims Against SSU and Official Capacity Claims Against Dr. Denning and
Dr. Sherman**

The Shawnee State Defendants assert that the § 1981 claims against SSU and  official

capacity claims against Dr. Denning and Dr. Sherman fail as a matter of law.  The Court agrees

in part.  The Eleventh Amendment bars the § 1981 claim against SSU for both injunctive relief

and money damages.  *Id.* at 661.  It also bars the claims for money damages against Dr. Denning

and Dr. Sherman in their official capacities.  *Id.* at 662; *see also Agrawal v. Montemagno*, 574 F.

App'x 570, 578 (6th Cir. 2014).  However, as with § 1983 claim, the Eleventh Amendment does

not bar § 1981 claims for injunctive relief against Dr. Denning and Dr. Sherman in their official

capacities.  *Agrawal*, 574 F. App'x at 578; *McCormick*, 693 F.3d at 662.  Therefore, the Court

will dismiss the § 1981 claim against SSU and the § 1981 claim against Dr. Denning and Dr.

Sherman in their official capacities for money damages, but not the § 1981 claim against Dr.

Denning and Dr. Sherman in their official capacities for injunctive relief.

2.     **Individual Capacity Claims Against Dr. Denning and Dr. Sherman**

The individual capacity claims against Dr. Denning and Dr. Sherman for money damages fail.  The Sixth Circuit has held that because 42 U.S.C. § 1983 creates an express cause of action for money damages against a state actor, the same right need not be implied to exist pursuant to § 1981.  *McCormick*, 693 F.3d at 661.  "[Section] 1983 is the exclusive mechanism to vindicate violations of § 1981 by an individual state actor acting in his individual capacity."  *Id.* Accordingly, the Court will dismiss the § 1981 race discrimination claims against Dr. Denning and Dr. Sherman in their individual capacities.

**C.     Fourth Claim for Relief:  Race Discrimination in Violation of 42 U.S.C. § 2000d**

Reeves alleges in the Fourth Claim for Relief that SSU discriminated against him in violation of Title VI, 42 U.S.C. § 2000d.[2]  Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  A plaintiff can assert a Title VI claim for both injunctive relief and money damages.  *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001).  The Shawnee State Defendants do not deny that SSU receives federal funding and is subject to the requirements of Title VI.  Rather, they assert that Reeves failed to state a plausible claim of race discrimination by SSU.

---

[2] In his Complaint, Reeves asserts the Title VI claim against only against SSU.  (Doc. 1 at PageID 15.)  Reeves suggests in his Memorandum in Opposition that all of the Defendants violated Title VI, but the Court will disregard that suggestion because it conflicts with the plain language of the Complaint.  (*Compare id. with* Doc. 12 at PageID 95.)  Moreover, Title VI claims can be asserted only against the entities that receive federal assistance, not against individuals.  *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1356 (6th Cir. 1996); *Kim v. Grand Valley State Univ.*, No. 1:11-CV-233, 2012 WL 1032704, at *1 (W.D. Mich. Mar. 27, 2012), *aff'd* (6th Cir. Feb. 11, 2013).

The Shawnee State Defendants argue that Reeves has failed to state allegations from which discriminatory intent can be inferred.  The Court disagrees.  Title VI prohibits only intentional discrimination.  *Id.* at 280.  A Title VI plaintiff lacking direct evidence of discrimination can use circumstantial evidence to prove his case.  *Amadasu v. Donovan*, No. 1:01-cv-210, 2006 WL 1401648, at *7 (S.D. Ohio May 18, 2006.)  Circumstantial evidence includes evidence that the defendant treated similarly-situated persons of a different race more favorably.  *Id.*[3]  Reeves alleges here that he was dismissed from the nursing program based on false reports from his preceptors, but that "white contemporaries whose performance on grades, clinicals and precepted experience were at or below plaintiff's were permitted to complete their precept experience and graduate."  (Doc. 1 at PageID 11.)  He also alleges that he was not permitted to re-take the precept experience, but that white students with worse performances were permitted to do so.  (*Id.* at PageID 12.)  Finally, he alleges that he complained about "illegal and inappropriate acts and conduct" to SSU officials, including Dr. Denning and Dr. Sherman.  (*Id.*)[4]

It is not always easy to determine the line between conclusory, formulaic recitation of the elements that fail to satisfy Federal Rule of Civil Procedure 8(a)(2) and short and plain

---

[3] Regarding other elements of a typical prima facie case of discrimination, Reeves plainly has alleged that he is black, that he was qualified for the nursing program, and that he suffered the materially adverse action of dismissal from the program.

[4] The Court has not considered the exhibit proffered by the Shawnee State Defendants.  (Doc. 11-1.)  The Shawnee State Defendants contend that the letter from Reeves to SSU, which they described as a list of perceived grievances, establishes that Reeves did not put SSU on notice about his race discrimination allegations.  (Doc. 11 at PageID 72–73.)  However, the absence of race allegations in one letter would not establish conclusively that Reeves did not complain about race discrimination to SSU officials at another time or in another manner.  The Shawnee State Defendants' arguments about this letter suggest factual disputes more appropriately addressed at the summary judgment stage.

14

statements of the claim which do. A threadbare allegation that similarly-situated white students were treated better would not suffice. The allegations here that lower-performing white students were permitted to complete the precepted experience, re-take the precepted experience, and re-train in areas in which they made mistakes are sufficient in this case to raise the inference of intentional discrimination. The Court will not dismiss the Title VI claim against SSU for failure to state a claim upon which relief can be granted.

**D.      Fifth and Sixth Claims for Relief:  Race Discrimination in Violation of Ohio Revised Code Chapter 4112 and Intentional Infliction of Emotional Distress**

      **1.      Claims Against SSU and Official Capacity Claims Against Dr. Denning and Dr. Sherman**

Reeves asserts two state law claims against the Shawnee State Defendants: race discrimination in violation of Ohio Revised Code Chapter 4112 and the common law tort of intentional infliction of emotional distress. The Shawnee State Defendants argue that these claims fail as a matter of law. Preliminarily, as discussed before, the Eleventh Amendment bars suits for money damages or injunctive relief against SSU, as an arm of the State, and suits for money damages against Dr. Denning and Dr. Sherman in their official capacities. *See Cummins*, 2016 WL 7093996, at *6. "The Eleventh Amendment bars a suit against a state . . . in federal court unless the state has waived its immunity." *Edwards v. Ky*, 22 F. App'x 392, 392 (6th Cir. 2001). "Ohio has not consented to state law damages actions against the State of Ohio, including actions against state officials acting in their official capacity, outside of its own courts." *Jones v. Hamilton Cty. Sheriff*, 838 F.3d 782, 786 (6th Cir. 2016); *see also Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir. 1999) ("Ohio has not waived its sovereign immunity in federal court" as to state law claims.) Rather, Ohio legislatively has consented to state law suits for money damages

15

against the State and state officials acting in their official capacity only in the Ohio Court of Claims. Ohio Rev. Code § 2743.02(A). Therefore, the Court will dismiss the state law claims for money damages against SSU and official capacity state law claims against Dr. Denning and Dr. Sherman.

The state law claims for injunctive relief against Dr. Denning and Dr. Sherman in their official capacities also fail. Ohio Revised Code § 2743.03 permits courts other than the Ohio Court of Claims "to hear and determine a civil action in which the *sole* relief that the claimant seeks against the state is a declaratory judgment, injunctive relief, or other equitable relief." *Santos v. Ohio Bur. of Workers' Comp.*, 101 Ohio St. 3d 74, 801 N.E.2d 441, 444 (2004) (quoting Ohio Rev. Code 2743.03(A)(2) (emphasis added)).[5] Reeves seeks damages, however, in addition to injunctive relief. (Doc. 1 at PageID 17.) "Pursuant to R.C. 2743.03(A)(2), when a

---

[5] The statute provides in relevant part as follows:

> (A)(1) There is hereby created a court of claims. The court of claims is a court of record and has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code and exclusive jurisdiction of the causes of action of all parties in civil actions that are removed to the court of claims. The court shall have full equity powers in all actions within its jurisdiction and may entertain and determine all counterclaims, cross-claims, and third-party claims.
>
> (2) If the claimant in a civil action as described in division (A)(1) of this section also files a claim for a declaratory judgment, injunctive relief, or other equitable relief against the state that arises out of the same circumstances that gave rise to the civil action described in division (A)(1) of this section, the court of claims has exclusive, original jurisdiction to hear and determine that claim in that civil action. This division does not affect, and shall not be construed as affecting, the original jurisdiction of another court of this state to hear and determine a civil action in which the sole relief that the claimant seeks against the state is a declaratory judgment, injunctive relief, or other equitable relief.

Ohio Rev. Code § 2743.03.

claimant in an action over which the Court of Claims has jurisdiction[—an action for money damages—]also alleges a claim against the state for declaratory, injunctive or other equitable relief arising out of the same circumstances, the Court of Claims has exclusive, original jurisdiction to determine the equitable claim along with the legal claim." *Columbus Green Bldg. Forum v. Ohio*, 980 N.E.2d 1, 7 (Ohio App. 2012). Accordingly, the Court will dismiss the state law claims for injunctive relief against SSU and against Dr. Denning and Dr. Sherman in their official capacities.

### 2.    Individual Official Capacity Claims Against Dr. Denning and Dr. Sherman

Likewise, Reeves's individual capacity claims against Dr. Denning and Dr. Sherman are barred under Ohio Revised Code §§ 9.86 and 2743.02(F). *See McCormick*, 693 F.3d at 664–65. Ohio Revised Code § 9.86 confers immunity on state officers and employees in civil actions arising under Ohio law for "damage or injury caused in the performance of [their] duties" unless their actions "were manifestly outside the scope of [their] employment or official responsibilities" or unless they "acted with malicious purpose, in bad faith, or in a wanton and reckless manner." Ohio Revised Code § 2743.02(F) requires that civil actions in which it is alleged that state officer or employees actions fall within the § 9.86 exceptions "shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity." These sections together require Reeves to assert his individual capacity state law claims against Dr. Denning and Dr. Sherman in the Ohio Court of Claims, not here. Lacking jurisdiction, the Court will dismiss the state law claims against Dr. Denning and Dr. Sherman. *See McCormick*, 693 F.3d at 665; *Anderson v. Ohio State Univ.*, 26 F. App'x 412, 415 (6th Cir. 2001).

17

**E.      Amending the Complaint in Lieu of Dismissal**

Finally, in the Memorandum Contra to the Motion to Dismiss, Reeves asks that if the Court find any of the Shawnee State Defendants' arguments persuasive, he be granted leave to amend the Complaint to cure the deficiencies.  (Doc. 12 at PageID 83, 97.)  However, he did not file a motion to amend under Rule 15(a) of the Federal Rules of Civil Procedure.  Even if the Court were to construe Reeves's request in the Memorandum Contra as a Rule 15(a) motion, he has failed to demonstrate why the Court should grant leave to amend.

Reeves did not proffer a proposed amended complaint.  District courts can deny Rule 15(a) motions when the plaintiff does not state a basis for amendment nor identify the substance of the proposed amendment.  *See Begala v. PNC Bank, Ohio Nat. Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000) (finding district court did not err or abuse its discretion in denying right to amend and that plaintiffs' request in a memorandum in opposition that they be given an opportunity to clarify their allegations was not a motion to amend); *C&L Ward Bros., Co. v. Outsource Solutions, Inc.*, 547 F. App'x 741, 745 (6th Cir. 2013) ("A properly filed motion for leave complete with an indication of the grounds upon which the amendment is sought and the general contents of the amendment is preferable.").   Additionally, it is not apparent how in this case how Reeves could cure deficiencies related to the Shawnee State Defendants' capacity to be sued under § 1983, Eleventh Amendment immunity, or Ohio Revised Code § 9.86 immunity.  Therefore, the Court declines to grant leave to amend in this case.

**IV.    CONCLUSION**

For the foregoing reasons, the Shawnee State Defendants' Motion for Judgment on the

Pleadings (Doc. 11) is hereby **GRANTED IN PART AND DENIED IN PART**.  Reeves can

proceed with the following claims against the Shawnee State Defendants:

A.  First and Third Claims (42 U.S.C. § 1983 claims for equal protection and race discrimination):

1.  The official capacity claims against Dr. Denning and Dr. Sherman for injunctive relief.

2.  The individual capacity claims against Dr. Denning and Dr. Sherman for money damages to the extent that Reeves has alleged they personally engaged in discriminatory conduct.

B.  Second Claim (42 U.S.C. § 1981 for race discrimination):  The official capacity claims against Dr. Denning and Dr. Sherman for injunctive relief.

C.  Fourth Claim (Title VI for race discrimination):  The claim against SSU.

IT IS SO ORDERED.

DATED this 1st day of March, 2017.

BY THE COURT:


S/Susan J. Dlott
SUSAN J. DLOTT
United States District Judge

19